We'll move now to our final case of the morning. This is Appeal 23-2370, United States v. Clayborne. Mr. Luthan, we'll begin with you. Good morning, Your Honor. May it please the Court, Elliot Luthan on behalf of Jack Clayborne. This appeal raises two claims arising from the sentencing of Mr. Clayborne below. First, the district court erred in the way in which it denied Clayborne credit for acceptance of responsibility, specifically by reasoning that Clayborne's apology was, quote, too little, too late. Second, Clayborne's due process right to be sentenced based on accurate information was also violated when the district court mistakenly characterized and believed that his criminal history consisted of a lot of robberies and then referenced and relied upon that criminal history when imposing sentence. I recognize these two overarching claims present numerous sub-issues and potential paths for this Court to resolve the appeal, so I'd be happy to give the Court's direction on where to begin. But if there are no immediate questions, I'd begin with the too late rationale in the acceptance determination. In reasoning that the acceptance in the apology was too late, the district court violated the Supreme Court's command in Pepper. That presents the narrowest path for remand, in large part because the government doesn't even grapple with Pepper in its response brief and turns a blind eye toward it. Pepper has a clear takeaway, and it's from Congress's statutory sentencing scheme, that no limitation shall be placed on the information to be considered at a resentencing. Claiborne gets the benefit of his apology and his change in behavior from the initial sentencing to the resentencing. And just as that change could redound to his benefit, as this Court instructed in Hopper, also a resentencing can cut both ways. For example, if a defendant picks up a new conviction in the interim, their criminal history category can be increased. And we know that the district court was referencing his apology being too late relative to the initial sentencing based on the transcript, and the government doesn't contend or grapple with that interpretation of the record. Instead, the government simply submits that timeliness is an appropriate consideration when determining acceptance of responsibility. And to that, I completely agree. In the mine run of acceptance determinations, particularly at initial sentencing, timeliness is a consideration. But the district court in this case specifically disclaimed wanting to penalize Claiborne for going to trial, and then at the resentencing stood on that reasoning and clearly premised the too late rationale to the initial sentencing by saying, I appreciate that sentiment, your apology. That's a different sentiment, I think, than what was expressed at the first hearing. And to the extent that this court wants to entertain the government's post hoc timeliness argument, that while, of course, the district court could justify the acceptance denial on the timeline relative to the indictment and pretrial proceedings, Robinson, this court's decision on Robinson, specifically rejects that. And this court should send it back to the district court, and if the district court wants to find that his apology was too late relative to those pretrial proceedings, it's free to do so. The second reasoning behind the district court's acceptance denial that the apology was too little also amounts to procedural error. And the best starting point for this is the third paragraph of Claiborne's apology letter, where he says, I sincerely apologize to Mr. Guster, his daughter, and his mother for the damage that I did to them. I understand that Mr. Guster and his family may never forgive me, but I hope that this letter helps them find closure and carry on with their lives. The government wants to ignore that portion of the letter, but it's there. And that was Claiborne taking accountability for his actions in the best way he knew how. Now, the government tries to look past the procedural error which arises because of the guidelines distinguishing between offense conduct and relevant conduct by contending, well, he didn't admit to anything. But that paragraph refutes that understanding of the record. And further to that point, apologizing to a victim is a through line of this court's acceptance of responsibility case law, particularly the two cases that the government cites in its response brief, Smith from 2017 and Corral y Barra from the 90s. Both of those underscore that a significant manifestation of acceptance of responsibility is apologizing to the victims. And in neither of those cases did the defendant do so. Here, we have that. Mr. Laughton, if we don't end up going your way with regard to standard of review, we conclude it's clear error. We have a district judge here who has sentenced this defendant twice, and she is reviewing this information, including the letter, in a manner that allows her to place it within the context of the entire case. For sure. She's also eyeballed the defendant twice. She can see the ins and outs of what he says in response to her. Is that something that we as an appellate court should step in on? So, Judge Brennan, what I'm hearing from your question is a bit of a question as to the sincerity of his comments, which this court, for example, in Garcia, has discussed as being a relevant consideration. And if the district court judge had said, I don't find your comments to be sincere, I think that would be an appropriate basis to deny the acceptance. But, one, we know from the record that she did find his comments sincere and his apologies sincere during the later, when she was imposing sentence, during the discussion of the 3553 factors. And the government doesn't take the position that his apology was insincere, just that it was insufficient. And so, to the extent that this court would find that clear air review applies, I think even the government's position now would amount to clear air, that if the finding below was that he did not admit to anything, that finding is clearly erroneous based on this third paragraph, in particular, of the apology. If there are no further questions on the acceptance, I'd briefly touch on the due process claim as well. As to the due process claim, the tougher question is reliance, as it usually is with these sort of claims. The government doesn't grapple with the actual meat of the transcript, where the district court judge engaged in a balancing act of positive and negative factors. Instead, the government's argument really amounts to the position that, well, the defendant has the responsibility of proving prejudice. That's simply incorrect. And the best case for this is Miller, is this court's decision in Miller, where the court says a single misinformed comment warrants resentencing if it reveals that the judge misapprehended the record with respect to an aggravating factor that the judge considered important. In other cases, and this is also cited in Miller, this court has described the reliance inquiry as turning on whether the court paid explicit attention or specific consideration to the inaccurate information. And here we have that. The district court mistakenly, surely inadvertently, but mistakenly believed that his criminal history consisted of not just some of, but a lot of robberies. And that wasn't the case. Assuming my time for rebuttal, I'll reserve the remainder unless the court has any further questions. Very good. Thank you, Mr. Laughlin. Mr. Tableson, we'll move now to you for argument on behalf of the government. Good morning. May it please the court, my name is Benjamin Tableson, and I represent the United States. When Jack Claiborne chose to go to trial and present a defense theory that it wasn't him and disclaim responsibility for his crime, he rendered himself a very poor candidate for acceptance of responsibility credit. And compounding that issue for him, he has to this day never actually said what it was he did that was a crime. As the sentencing judge said, his apology letter, such as it was, carefully treaded around whatever it was he was apologizing for. And those two things together, then summarized, are that for purposes of the sentencing guidelines, his letter came too late and was too little. Nonetheless, Chief Judge Pepper took into account at resentencing the fact that he had at least filed a letter at the resentencing, at least generally apologizing for what he had done, and gave him credit, gave him a year off of his sentence as a 3553A factor. He was not eligible under the guidelines. He nonetheless got some credit for at least saying, I'm sorry for the harm that was caused in the passive to the victims. This is on clear error, and so it is not close. Our position is that even on de novo review, it is not close as to acceptance. As to the second issue, Judge Pepper was relying on accurate facts. She had manifestly, across the first sentencing and resentencing, reviewed the PSR carefully. She describes his family history in detail, his employment history in detail, his educational history in detail, down to the challenges he faced at his particular high school. She describes his criminal history. She could have used a more precise catch-all for thefts, burglaries, and robberies, but we have no reason to think she relied on an adverse and incorrect factual understanding of his criminal history. If she had said, and this would be more analogous to the Miller case, if she had said, Mr. Claiborne, you committed robberies, not thefts and not burglaries, but robberies, and those are worse, then this case would be like Miller, where the sentencing judge had misapprehended a prior offense as a felony, and it was instead a misdemeanor which is definitionally less severe, and then explained over the apparent objection of defense counsel why that was significant to the sentencing judge. This is instead like Bruce, like Nwiki, like Oliver, and like Kanan, where there's a passing reference that in this case could have been more precise. And those cases were actually inaccurate, but that we have no reason to think were relied on by the judge. Reliance is a low bar, undoubtedly, but it is some bar, and a passing mistaken reference does not clear that bar. Chief Judge Pepper presided over this case for years, ruled on bond motions that included lengthy arguments over Mr. Claiborne's criminal history trial, first sentencing, second sentencing. I think at this point, Mr. Claiborne is reading a sentencing transcript and straining to find error, and because there is no error there, he fails to do so. If Your Honors have no questions. Thank you, Mr. Tableson. Thank you very much. Mr. Lawson, we'll move back to you. We'll give you two minutes of rebuttal. Two points in response. First, as to the government's position that he is a poor candidate for acceptance of responsibility, at the initial sentencing, completely agree. But the takeaway of Pepper is that at the resentencing, the defendant gets credit for rehabilitation. And the district court judge is free to then reject that, but at least needs to grapple with that. And as to the district court judge's reasoning that the letter, quote, carefully treads around the conduct, we're missing the key follow-up. What is it treading around? There needs to be some sort of finding of, well, what of the offense conduct or the relevant conduct is the letter treading around? Well, specifically the offense conduct, because he doesn't need to truthfully admit to relevant conduct. If relevant conduct was on the judge's mind, all he has to do to earn acceptance of responsibility is not falsely deny or frivolously contest that conduct. And so that just extra sentence of explaining what it is in the letter that is lacking, what it is that the letter treads around, is what would then fulfill what the guidelines describe, and there would no longer be procedural error. Mr. Laughlin, on the second point, do you want to address the reliance issue? Right. So as to whether the mistaken characterization was relied upon, it was not just a passing reference. We have numerous instances. So there's at the outset where the judge says some of your criminal history, no, a lot of your criminal history is robbery, which first is, I think, an indication that it's clearly on her mind and way on the district court's mind. And then secondly, when weighing the positive versus the negative and thinking through, well, should I impose the same sentence this time as last time, the district court judge specifically within those negative factors mentions, quote, your past history and your past history relative to the care that you have from other folks around you. I can pull up that exact spot in the record. That's on from in the opening brief, page 24 to 25, page 40 of the sentencing transcript. Quote, your own past history and your past history in spite of the fact that you were surrounded by a lot of people who care about you. That puts the case like Miller, like Corona-Gonzalez, multiple instances, and it demonstrates reliance. Thank you very much, Mr. Laughlin. Thank you very much, Mr. Tableson, the case will be taken under advisement. That will close our hearings for the day.